AF Approval ____NA____                    Chief Approval ____CB____

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 6:23-CR-96-PGB-DCI

LEONARDO SALVATORE MARINO

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Leonardo Salvatore Marino, and the attorney for the defendant, Fritz Scheller, mutually agree as follows:

**A.**    **Particularized Terms**

    1.  Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One of the Indictment. Count One charges the defendant with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e).

    2.  Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment of 15 years up to 30 years, a maximum fine of $250,000, a term of supervised release of at least five years up to life, and a special assessment of $100 per felony count for individuals.

Defendant's Initials L.M

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

Additionally, pursuant to 18 U.S.C. § 3014, the Court shall impose a $5,000 special assessment on any non-indigent defendant convicted of an offense in violation of certain enumerated statutes involving: (1) peonage, slavery, and trafficking in persons; (2) sexual abuse; (3) sexual exploitation and other abuse of children; (4) transportation for illegal sexual activity; or (5) human smuggling in violation of the Immigration and Nationality Act (exempting any individual involved in the smuggling of an alien who is the alien's spouse, parent, son or daughter).

In addition, the Court shall impose an additional special assessment, pursuant to 18 U.S.C. § 2259A, of no more than $50,000 for an offense involving the production of child pornography, in violation of 18 U.S.C. § 2251(a).

3. <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First</u>:        An actual minor, that is, a real person who was less than 18 years old, was depicted;

<u>Second</u>:    The defendant employed, used, persuaded, induced, enticed, or coerced the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and

Defendant's Initials <u>L.M</u>                    2

Third: Either (a) the defendant knew or had reason to know that the visual depiction would be mailed or transported in interstate or foreign commerce; (b) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; or (c) the visual depiction was mailed or actually transported in interstate or foreign commerce.

## 4. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

## 5. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to known victims of the offense for the full amount of the victims' losses as determined by the Court. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

## 6. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea

Defendant's Initials _L. m_   3

agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.  <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant

Defendant's Initials _L. m_                    4

agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    8.  Forfeiture of Assets

    The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following: an Apple iPhone 14, which was seized from the defendant on or about January 26, 2023, and which was used in the offense to which the defendant is pleading guilty.

    The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

    The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as

Defendant's Initials _L.m_      5

to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The

Defendant's Initials _Lnm_                6

defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

Defendant's Initials _L. m_                    7

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

9. Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

Defendant's Initials _Lm_          8

**B.**     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from

Defendant's Initials _L. m_          9

imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

    3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

    4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those

Defendant's Initials _L. m_         10

held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the

Defendant's Initials _L. m_          11

attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state,

Defendant's Initials  _L. m_                    12

or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no

Defendant's Initials  L·m                    13

trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.   The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement, including Exhibit A, constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials ___L.m___          14

13.    <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___28th___ day of March 2024.

ROGER B. HANDBERG
United States Attorney

_____
Leonardo Salvatore Marino
Defendant

_____
Michael Sartoian
Assistant United States Attorney

_____
Fritz Scheller
Attorney for Defendant

_____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _L.m_                    15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO. 6:23-cr-96-PBG-DCI

LEONARDO SALVATORE MARINO

PERSONALIZATION OF ELEMENTS

1.    Did you know that an actual minor, that is, a real person who was less than 18 years old, was depicted in the video recording?

2.    Did you employ, use, persuade, induce, entice, or coerce the minor to engage in sexually explicit conduct for the purpose of producing the video recording of the conduct?

3.    Was one of the following three requirements satisfied?

  (a) Did you know or have reason to know that the video recording would be mailed or transported in interstate or foreign commerce?

  (b) Was the video recording produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer? or

  (c) Was the video recording mailed or actually transported in interstate or foreign commerce?

Defendant's Initials _*L. m*_                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr-96-PBG-DCI

LEONARDO SALVATORE MARINO

## FACTUAL BASIS

Between on or about December 17, 2022, and on or about December 22, 2022, in the Middle District of Florida, the defendant did employ, use, persuade, induce, or entice a minor that had not attained the age of twelve years (the "child victim"), to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, and this conduct impacted interstate or foreign commerce as charged in the Indictment.  The child victim was an infant at the time of this offense and was related to the defendant or in his custody, care, or supervisory control.

## **Background**

On December 22, 2022, the Winter Park Police Department received a report from Witness C.S. of possible abuse involving an infant. Witness C.S. told officers that she received a message on Instagram from user account "ceofatherr" which belonged to a person she knew as Leonardo Marino (MARINO). Although they were not close friends, Witness C.S. knew MARINO from past social encounters. Witness C.S. reported that MARINO's messages began with a picture of the ground

Defendant's Initials _L.m_                    17

and inquired if anyone wanted to hear a secret.[1] MARINO also inquired of Witness C.S. if she could be trusted, to which Witness C.S. replied that if he (MARINO) wanted to tell her the secret, she would be willing to listen. MARINO replied, "I beat my meat when she was sleeping." Witness C.S. followed up by asking who was sleeping, to which MARINO replied, "the baby." MARINO went on to say, "I nutted on her while she was sleeping."

Throughout the conversation, MARINO was emotional about what he had done and kept telling Witness C.S. that he wanted to be "locked up." MARINO then told Witness C.S. that he had videos as proof of what he had done and asked if she wanted to see them. Witness C.S. told investigators that MARINO then messaged her two videos that depicted MARINO's "thing [penis]" over the baby's face and in the baby's hand. Witness C.S. said she recognized the baby as a particular child (hereinafter the "CV") based on photographs she previously had seen over social media. The mother of the CV later positively identified the CV in the videos as her daughter.

Witness C.S. quickly saved the two videos and took screenshots of most of their Instagram conversation. Law enforcement conducted a subsequent examination of Witness C.S.'s cellular phone and located the screenshots referenced by Witness C.S., which depicted the following messages, in which "Ceofatherr" is MARINO and "C.S." is Witness C.S.:

---

[1] Notably, MARINO's messages were only being sent to Witness C.S.

Defendant's Initials _L.rm_                    18

Ceofatherr:  plz

Ceofatherr:  why :(

C.S.:        Because

Ceofatherr:  ill show u tho

Ceofatherr:  cuz I trust u

Ceofatherr:  bet?

C.S.:        OK

Ceofatherr:  thts ok w u

C.S.:        If u wanna show me then yeah

Ceofatherr:  igh

Ceofatherr:  I hope u can help me

Ceofatherr:  (slapping face emoji) fr

Ceofatherr:  (slapping face emoji)

C.S.:        What's wrong w u

Ceofatherr:  ?

C.S.:        U want me to tell I'm [sic] u

Ceofatherr:  is tht bad idea[?]

C.S.:        Yes

C.S.:        Why would I do that?

Ceofatherr:   cuz yk

C.S.:        No

Ceofatherr:  I nutted on ha [sic] while shr [sic] slept in ha [sic] crib

Defendant's Initials ___L_m___            19

C.S.:        Call yourself

Ceofatherr:  wow

Ceofatherr:  ighh I could prove to uu

Ceofatherr:  :(

Ceofatherr:  ill give u my id n ssn too

Ceofatherr:  ?

Ceofatherr:  help

Ceofatherr:  look

Ceofatherr:  u dnt think thts me

C.S.:        I don't think that's u

Ceofatherr:  damn how yk?

C.S.:        cuz ion see u

C.S.:        I don't think u would do sum like that

C.S.:        U good ?

C.S.:        You shouldn't do that that's ur baby

Ceofatherr:  ?

Ceofatherr:  I cant resist it ma

Ceofatherr:  idk y thts y I said lock me up

Ceofatherr:  (slapping face emoji)

Ceofatherr:  IG I wnt send vid

Ceofatherr:  :/

C.S.:        Well promise me

Defendant's Initials  L. M        20

C.S.:        u wont ever do that again

Ceofatherr:  I orob [sic] will

Ceofatherr:  ://

C.S.:        No

Ceofatherr:  Yes

Ceofatherr:  plz help me lock me up

Ceofatherr:  will u help now

Ceofatherr:  ??

Ceofatherr:  ?

Ceofatherr:  will u?

Ceofatherr:  ???

Ceofatherr:  u not gon help??

Ceofatherr:  damn

Ceofatherr:  smh

Ceofatherr:  (slapping face emoji)

C.S.:        Whats wrong w u

Ceofatherr:  see

Ceofatherr:  theres mo [sic] vids

Ceofatherr:  (slapping face emoji)

C.S.:        Why

Ceofatherr:  will u help now

Ceofatherr:  ??

Defendant's Initials _L. m_        21

Ceofatherr:   ill say it rn

Ceofatherr:   bet?

Ceofatherr:   ?

C.S.:           Go ahesd

Ceofatherr:   I bear [sic] my shi while she was sleepin

Ceofatherr:   beat

Ceofatherr:   (crying emoji and rolling eyes emoji)

C.S.:           Who

Ceofatherr:   (crying emoji)

C.S.:           That ain't bad

Ceofatherr:    like I nutted

C.S.:           She was sleepin

C.S.:           She didn't see shit

Additionally, the two videos that MARINO sent to Witness C.S. were found in the extraction of Witness C.S.'s phone. The first video shows the CV lying down while sleeping in bedding which appeared to be a dark colored printed blanket. MARINO then masturbates over the CV's head, where only MARINO's penis, thigh, and left hand are visible.

The second video shows the CV sleeping in the same bedding and dark colored printed blanket, as well as a pink blanket. MARINO's erect penis then enters the video of the video and makes contact with the CV's right cheek and nose. MARINO then

Defendant's Initials  L.m                    22

places his penis in the open right hand of the CV, then proceeds to move his penis back and forth in her hand.

### Subsequent Investigation

On January 26, 2023, state authorities executed a search warrant at MARINO's primary address in Orlando, Florida. The following items were seized as evidence during the search warrant:

- Brown patterned blanket, which appears to match the one in the videos
- Pink w/red designs, sized twelve-month-old Carters brand pajamas which appear to match the pajamas in the videos
- Silver Apple iPhone 14 ("MARINO's cellular phone")

On January 27, 2023, the following day, a search warrant was secured for the search of MARINO's cellular phone and an Orange County Sheriff's Office (OCSO) Digital Forensics Examiner did an extraction of the phone. The analyst found that user account ceofather@icloud.com was signed in on MARINO's cellular phone.

On February 1, 2023, a search warrant for user account ceofather@icloud.com was procured. Law enforcement learned the following account details:

| | |
|---|---|
| Apple ID: | ceofather@icloud.com |
| First Name: | ceo |
| Last Name: | father |
| Country: | United States |
| Language: | US-EN |

Defendant's Initials _L.m_                  23

Account Status:   Active

Created On:       Mon, 19 Dec 22 13:20 (PT)

Address:       [MARINO's primary residence in Orlando, Florida]

Day Phone: [one of MARINO's phone numbers with a "754" area code]

Additionally, various relevant files were located that: 1) connected MARINO to the Ceofatherr Instagram account; 2) showed MARINO's attempts to change his Instagram username multiple times during the alleged date range of the offense charged in the Indictment (as well as the phone number and email address, the latter of which was MARINO's newly created iCloud account referenced *infra*, in his subscriber information); and, 3) showed a screenshot photo of MARINO's Snapchat account's "blocked" page, where Witness C.S.'s username is the most recent blocked user account.

Further, the Florida Department of Law Enforcement's (FDLE) forensics lab examined the brown printed blanket found during the search of MARINO's home—which appears to be the same blanket observed in the two videos of child sexual abuse material—and found two stains that were identified as "sperm cell fraction[s]." FDLE forensics then compared MARINO's buccal swabbed DNA standards to these sperm cell fractions and determined that they matched MARINO's DNA profile.[2]

---

[2] FDLE further concluded that the DNA profile from the sperm cell fractions are greater than 700 billion times more likely to occur if the sample originated from MARINO than from an unrelated individual.

Defendant's Initials _L⌐m_                    24